ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| JESSICA TRINIDAD CÁCERES<br><br>Apelante<br><br><br>V.<br><br><br>EDUARDO DELGADO DELGADO<br><br>Apelado | TA2026AP00148 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala Superior de Caguas<br><br>Caso Núm. CG2023CV03636<br><br>Sobre: Liquidación de Comunidad de Bienes |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz, y la juez Aldebol Mora

**Brignoni Mártir, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de mayo de 2026.

Comparece ante nos, Jessica Trinidad Cáceres (en adelante, "la apelante"). Solicita nuestra intervención para que dejemos sin efecto la *"Sentencia"* emitida el 2 de diciembre de 2025 y notificada al siguiente día, por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante esta, el foro primario determinó que el único bien que mantienen en común las partes es el terreno y no la estructura donde la pareja residió durante su relación afectiva. En consecuencia, ordenó que el señor Eduardo Delgado Delgado (en lo sucesivo, "el apelado"), pague a la apelante la cantidad de $10,500.00, suma que constituye la mitad del valor del terreno, según la tasación presentada. Además, el foro primario determinó que los automóviles en cuestión son de la titularidad exclusiva del apelado; adjudicó con un *No Ha Lugar* la compensación solicitada por la apelante; y declaró *No Ha Lugar* la reconvención instada por el apelado.

Por los fundamentos que expondremos a continuación, confirmamos la *"Sentencia"* recurrida.

**I.**

El 25 de octubre de 2023, la apelante presentó una *"Demanda"* sobre división de comunidad de bienes en contra del apelado con quien mantuvo una relación consensual por espacio de veinte (20) años. Expuso, que durante su relación de convivencia acumularon conjuntamente una serie de bienes muebles e inmuebles. Aseveró, que los referidos bienes consisten en una casa sita en el Municipio de Gurabo y cuatro (4) vehículos de motor. A su vez, reclamó el pago de la suma monetaria establecida en la Sentencia del caso Civil Núm. E PE2009-0067 y una indemnización en concepto de renta por el uso exclusivo que el apelado mantiene sobre el referido inmueble.

En respuesta, el 29 de diciembre de 2023, el apelado presentó *"Contestación a Demanda y Reconvención."* A través de la alegación responsiva, aceptó que mantuvo con la apelante una relación afectiva análoga a la conyugal durante el tiempo indicado en la *"Demanda."* No obstante, negó que la apelante tenga derecho a las sumas de dinero peticionadas. Al respecto, indicó que él adquirió de su propio pecunio los bienes muebles e inmuebles señalados en la *"Demanda."* Además, arguyó que la compensación adjudicada mediante la aludida Sentencia es una que le pertenece de manera exclusiva por no haber contraído nupcias con la apelante. En cuanto a la reconvención, instó una acción en cobro de dinero en contra de la apelante debido a que ésta presuntamente retiró de su cuenta bancaria una suma de dinero para uso personal.[1]

Así las cosas, el 16 de junio de 2025, las partes de epígrafe presentaron de manera conjunta el "*Informe de Conferencia con Antelación al Juicio.*" Acto seguido, el 18 de junio de 2025, se celebró la referida Conferencia. Surge de la *"Minuta"* de dicha Vista, notificada el 20 del mismo mes y año, que las partes estipularon los siguientes hechos:

1. Las partes tuvieron una convivencia consensual por veinte (20) años.

---

[1] El 18 de enero de 2024, la apelante presentó *"Contestación a la Reconvención"* mediante la cual negó las alegaciones principales de la reconvención instada en su contra.

2. Las partes compraron en común pro-indiviso en una participación de un 50% cada uno el terreno localizado en Santa Rita, Carretera #181 Km. 19.2 Bo. Celada Arriba, Sector Los Cruz en Gurabo Puerto Rico.

3. Que la demandante trabajó durante esos veinte (20) años.

4. La propiedad fue tasada por Milton Flores.

El 25 de noviembre de 2025, se celebró el juicio del presente caso. Durante la vista en su fondo se desfiló prueba testimonial consistente en los testimonios de la apelante, el apelado y el Tasador de la propiedad inmueble en controversia.

Concluida la vista en su fondo, el 3 de diciembre de 2025, el foro primario notificó la *"Sentencia"* que hoy se nos solicita revisar. Mediante esta, determinó que el único bien que mantienen en común las partes es el terreno y no la estructura donde la pareja residió durante la relación afectiva. En consecuencia, ordenó que el apelado pague a la apelante la cantidad de $10,500.00, suma que constituye la mitad del valor del terreno, según la tasación presentada. Además, el foro primario determinó que los automóviles en cuestión son de la titularidad exclusiva del apelado; adjudicó con un *No Ha Lugar* la compensación solicitada por la apelante; y declaró *No Ha Lugar* la reconvención instada por el apelado.

En la *"Sentencia"* dictaminada el tribunal *a quo* esbozó las siguientes determinaciones de hecho:

1. Las partes sostuvieron una relación consensual por espacio de 20 años, comenzando la convivencia el 24 de julio de 1999 hasta el 10 de diciembre de 2019. Durante dicha relación las partes procrearon un hijo, el cual nació en el año 2000.

2. En el 2016 las partes se separaron por espacio de 2 meses.

3. Del año 1999 al 2012 las partes residieron en los altos de la vivienda de la madre de Delgado Delgado.

4. En los años 1999 al 2001 Trinidad Cáceres participaba del Programa de Estudio y Trabajo en la antigua Universidad del Turabo, ganando $150.00 mensuales y trabajaba un aproximado de 9 meses al año.

5. De 2001 al 2003 la parte demandante laboró en Café Crema como Oficinista de Contabilidad. No recuerda su ingreso para dicha fecha.

6. De 2003-2005 Trinidad Cáceres trabajó en la Constructora San Gerardo como Oficinista de Contabilidad. Su sueldo era de $8.00 la hora por 40 horas a la semana para un aproximado de $1,300.00 mensuales.

7. En el 2005 Trinidad Cáceres laboró en Olympic Marketing.

8. De 2005 al 2015 la parte demandante trabajó en el Laboratorio Sanco como Recepcionista y Oficinista de Contabilidad. Para los años 2008 y 2013 la parte demandante tuvo un sueldo anual aproximado de $18,000.00. Para el año 2014 tuvo un sueldo anual aproximado de $12,000.00 y para el año 2015 tuvo un sueldo anual aproximado de $14,000.00.

9. Desde el 2015 al presente Trinidad Cáceres labora en el programa Head Start. En el año 2016 tuvo un sueldo anual aproximado de $17,000.00.

10. El 5 de junio de 2002 mediante la Escritura Número 6 de Compraventa ante la Notario Gladys Fernández de Ruiz las partes adquirieron en igual proporción el siguiente solar:

REMANANTE RÚSTICA: Parcela radicada en el Barrio Celada de Gurabo, que por virtud de segregación ha quedado reducida a una cabida superficial de OCHOCIENTOS NOVENTA Y CUATRO punto NUEVEMIL CIENTO VEINTICINCO metros cuadrados.---------------------------------- Colinda por el NORTE con Lote Dos, segregado, por el SUR con SARA DÍAZ BERMÚDEZ, por el ESTE con TITO y por el OESTE con faja de terreno dedicada a uso público.------------ Inscrita el FOLIO Doscientos Sesenta y Ocho del TOMO Ciento Treinta de Gurabo, FINCA Cuatro Mil Novecientos Uno.

11. Las partes pagaron $6,000.00 por el terreno antes descrito.

12. Delgado Delgado comenzó con la construcción de la vivienda objeto del presente litigio para el año 2005 aproximadamente y las partes se mudaron a la propiedad el 28 de diciembre de 2013. La construcción de la residencia duró 8 años aproximadamente.

13. Delgado Delgado compró los materiales para la fabricación de la residencia y construyó la misma junto a la ayuda de unos terceros.

14. Durante la relación con Delgado Delgado, Trinidad Cáceres sufragaba sus gastos, tales como alimentos, gasolina y ropa más los gastos de su hijo.

15. Delgado Delgado trabajó en la antigua Universidad del Turabo hasta el 2008 cuando fue despedido por un alegado hostigamiento sexual.

16. En el año 2009 Delgado Delgado entabló un pleito de despido injustificado y discrimen por razón de género. El 26 de abril de 2010 el Tribunal dictó sentencia declarando ha lugar la demanda y concediéndole la suma de $105,329.48 más $13,066.17 en concepto de honorarios de abogado. Dichas cuantías fueron recibidas por Delgado Delgado en el año 2011.

17. Posteriormente, Delgado Delgado laboró por 5 años en el Municipio de Caguas.

18. Durante los fines de semana y días feriados Delgado Delgado realizaba trabajos de construcción, así, generando un ingreso adicional al de su empleo regular.

19. Tras el despido injustificado y previo a laborar en el municipio, la parte demandada continuó trabajando en el área de construcción. Durante este tiempo, además, recibió los beneficios del Departamento del Trabajo y Recursos Humanos.

20. Tras el despido injustificado, la construcción de la residencia objeto del presente litigio se vio paralizada hasta que Delgado Delgado recibió el dinero del pleito sobre despido injustificado.

21. Luego de recibir la compensación por el pleito de despido injustificado, Delgado Delgado compró los siguientes vehículos de motor los cuales están a su nombre: un Toyota, modelo Tacoma, una Jeep Wrangler, un Ford, modelo Mustang y un Corona, hecho que reconoció la parte demandante.

22. Trinidad Cáceres nunca tuvo acceso a las cuentas de banco de Delgado Delgado.

23. Trinidad Delgado no recuerda lo que aportó para la construcción de la vivienda objeto del presente litigio. Tampoco pudo especificar alguna cantidad invertida en materiales. Sin embargo, reconoció que Delgado Delgado eran quien realizaba las compras de los materiales de construcción.

24. El único bien que Trinidad Cáceres recordó haber comprado fue el triturador del fregadero, el cual ascendió a $109.00 aproximadamente.

25. Según la tasación efectuada por el tasador, Milton Flores Solá el valor de la propiedad objeto de este litigio asciende a $165,000.00, incluyendo el solar y la vivienda.

26. El valor del terreno únicamente es de $21,000.00. Por lo que, el valor de vivienda es de $144,000.00.

27. Luego de la separación de las partes, Delgado Delgado ha continuado viviendo en la propiedad objeto del presente litigio. Incluso, este contrajo matrimonio el 21 de octubre de 2022 y desde entonces su esposa, también, reside en dicho inmueble.

En desacuerdo, oportunamente, el 17 de diciembre de 2025, la apelante presentó *"Moción al amparo de la Regla 43.1 y 47 de las de Procedimiento Civil de 2009, según enmendadas."* El 14 de enero de 2026, el foro primario declaró *No Ha Lugar* el petitorio de reconsideración. El mismo día, el tribunal de instancia notificó a las partes tal determinación.

Aun en desacuerdo, el 11 de febrero de 2026, la apelante presentó ante este Tribunal un recurso de apelación. Mediante este, esbozó los siguientes señalamientos de error:

Erró el Tribunal de Primera Instancia Sala de Caguas, en la apreciación de la prueba, al no darle credibilidad al testimonio de la demandante-apelante y no evaluar la prueba documental sometida y estipulada, con relación los pagos de manutención de los gastos de la propiedad así como lo aportado para la construcción de la propiedad, hechos durante el concubinato por la demandante-apelante, que acreditan lo invertido por la demandante- apelante en la misma, sin lo cual, no hubiese podido pagar los materiales y la construcción, pues el demandado apelación [sic] perdió su empleo en el año 2008 presentando demanda por despido injustificado recibiendo indemnización en el año 2011 alegando en dicha demanda que estuvo en depresión y que no trabajaba conforme a la prueba estipulada.

Erró el Tribunal de Primera Instancia Sala de Caguas en la apreciación de la prueba, al darle entera credibilidad a lo declarado por el demandado-apelado, con relación a que aun cuando perdió su empleo, trabajó en construcción y o pagos los materiales y construcción de la propiedad [sic], cuando de la evidencia estipulada, surge que el demandado-apelado afirmó en el caso de despido injustificado presentada a raíz [sic] de un despido, que estuvo en depresión después del despido y que no trabajaba.

Err[ó] el Tribunal de Primera Instancia Sala de Caguas en la apreciación de la prueba, al darle entera credibilidad a lo declarado por el demandado, sobre el que este pago los materiales y la construcción de la propiedad, sin que este declarara ni aportara evidencia documental sobre sus ingresos, listado de materiales comprados, estatus de la construcción cuando este perdió el trabajo y que trabajos quedaron pendientes y la construcción realizada luego de recibir la indemnización del despido.

Erró el tribunal de Primera Instancia Sala de Caguas, en su conclusión ya que esto provoca un enriquecimiento injusto de la parte demandada-apelada, siendo la determinación del Tribunal de Primera Instancia Sala de Caguas contrario a derecho.

El 19 de febrero de 2026, este Tribunal notificó una *"Resolución,"* mediante la cual le concedimos un término de treinta (30) días a la apelante para que presentara la Transcripción de la Prueba Oral e indicara si presentaría un alegato suplementario. Asimismo, le comunicamos al apelado que el término de treinta (30) días para presentar su escrito en oposición comenzaría a transcurrir desde que se acoja la estipulación de la prueba oral o en su defecto desde el día en que se presente el alegato suplementario.

El 30 de marzo de 2026, la apelante sometió la Transcripción solicitada y comunicó que el apelado consintió a la estipulación de la prueba oral. El mismo día, esta Curia notificó una *"Resolución"* mediante la cual acogimos la Transcripción estipulada y apercibimos a las partes sobre el comienzo de los treinta (30) días que tiene el apelado para presentar su alegato en oposición, toda vez que la apelante no notificó su intención de presentar un alegato suplementario.

Así pues, el 29 de abril de 2026, el apelado presentó "*Alegato en Oposición de la Parte Apelada."*

**II.**

**A.    Concubinato:**

En nuestro ordenamiento se reconocen dos tipos de concubinato: (1) el "queridato" y el (2) *more uxorio*. El concubinato *queridato* surge

cuando uno o ambos miembros de la pareja están casados con otra persona y por tanto están impedidos de casarse entre sí. *Caraballo Ramírez v. Acosta*, 104 DPR 474, 476 (1975). El concubinato *more uxorio* surge cuando ambos son solteros y por ende aptos para casarse, pero deciden vivir pública y notoriamente como un matrimonio, aunque sin cumplir con las formalidades exigidas para éste. *Id*; *Torres Vélez v. Soto Hernández*, 189 DPR 972, 989 - 990 (2013).

En el concubinato no se generan derechos económicos como en el matrimonio por el mero hecho de establecerse una relación. *Ortiz De Jesús v. Vázquez Cotto*, 119 DPR 547, 549 (1987). No obstante, si se ha constituido una comunidad de bienes la persona concubina que así lo reclame deberá presentar prueba de ello. *Torres Vélez v. Soto Hernández,* supra; *Caraballo Ramírez v. Acosta,* 104 DPR 474, 481 (1975).

Los concubinos podrán demostrar un interés propietario sobre los bienes adquiridos o que hayan incrementado de valor mientras estuvo vigente la relación, de la misma forma que se establece la existencia de una comunidad de bienes, a saber: 1) como pacto expreso; 2) como pacto implícito, y 3) como un acto justiciero para evitar el enriquecimiento injusto de la otra parte. *Domínguez Maldonado v. E.L.A.*, 137 DPR 954, 967 (1995). Es preciso señalar, "que se tiene que probar que se aportó esfuerzo y trabajo para producir o aumentar el capital objeto de la reclamación del concubino." *Id.*

Se denomina pacto expreso el "contrato o convenio para crear y establecer una comunidad de bienes de origen voluntario". R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, 1ra ed., San Juan, Ed. Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 2002, Vol. 2, pág. 858. Para este no hay requisitos de forma, por lo que puede ser oral o escrito. *Id.* Solo puede acreditarse por medio de expresiones escritas o verbales, hechas antes, durante o después del concubinato. *Id.*, pág. 861. De otra parte, se denomina pacto implícito a las relaciones contractuales de hecho en las

que una persona realiza un determinado acto o adopta un comportamiento que, sin declarar abiertamente voluntad alguna, permite inferir que tal voluntad existe y la presupone necesariamente". *Id.*, pág. 860. El pacto implícito que se desprende espontáneamente de la relación humana y económica constituida entre las partes puede probarse por todos los medios disponibles en Derecho. *Caraballo Ramírez v. Acosta*, *supra*, pág. 481.

Los siguientes actos, por sí solos, no sostienen que exista pacto implícito: trabajo en el negocio del otro concubino, aunque se le entregue una participación en las utilidades; tareas domésticas en el hogar; administración de los bienes del otro; simples gestiones económicas de la vida diaria y la contribución a los gastos del hogar o de enfermedades. Serrano Geyls, *op cit.*, pág. 861-862. En cambio, ejemplos para acreditar la existencia del pacto son: el uso del nombre de ambos concubinos en el nombre del negocio, una cuenta bancaria común, compra de bienes en común, y la coposesión de bienes. *Id.*, pág. 862.

De existir una comunidad de bienes, debe atenderse a las disposiciones aplicables a dicha figura jurídica, según reguladas por nuestro Código Civil para su adjudicación y liquidación. De no establecerse la existencia de una comunidad de bienes, por pacto expreso o implícito, la parte que solicita participación económica podrá acreditar que aportó bienes, valores y servicios que resultaron en ganancias y, como un acto justiciero para evitar el enriquecimiento injusto de la otra parte, podría reclamar el valor de bienes, valores y servicios, y las correspondientes ganancias obtenidas. *Caraballo Ramírez v. Acosta*, *supra*, pág. 481-482.

**B.     Comunidad de Bienes y su división y liquidación:**

La comunidad de bienes existe cuando la propiedad de una cosa o de un derecho pertenece proindiviso a dos o más personas. 31 LPRA sec. 8191. En ausencia de un pacto expreso, la participación de los comuneros en la administración de la cosa tenida en común, así como su parte en el activo y pasivo de esta cosa, será proporcional a sus respectivas cuotas,

que se presumirán iguales, mientras no se pruebe lo contrario. 31 LPRA sec. 8193; *Montalván v. Rodríguez*, 161 DPR 411, 423 (2004).

No obstante, si una parte alega que la participación de la otra es menor, debe rebatir tal presunción bajo el estándar de preponderancia de la prueba, probando el valor de la participación, esfuerzo y trabajo en los bienes adquiridos y objeto de reclamación. *Id*.; véase, además, Regla 110(f) de Evidencia, 32 LPRA Ap. VI. A su vez, cuando el reclamante fundamenta su participación económica sobre los bienes generados durante el concubinato en la figura del enriquecimiento, no puede ampararse en la presunción de igual en la proporción de las cuotas. *Caraballo Ramírez v. Acosta*, supra, págs. 485-486.

Toda vez que ningún comunero está obligado a permanecer en la comunidad de bienes, en cualquier momento, podrá pedir la división de la cosa común. 31 LPRA sec. 8223. Las reglas concernientes a la división de la herencia son aplicables a la división entre los partícipes de la comunidad. 31 LPRA sec. 8232. La liquidación implica tres operaciones: (1) la formación de un inventario con avalúo y tasación; (2) la determinación del haber social o del balance líquido partible; y (3) la división y adjudicación de los bienes. *Montalván v. Rodríguez*, 161 DPR 411, 457 (2004); *Rosa Resto v. Rodríguez Solís*, 111 DPR 89, 91 (1981); *Janer Vilá v. Tribunal Superior*, 90 DPR 281, 300-301 (1964).

**C.     Apreciación de la Prueba:**

En materia de prueba testimonial, "[h]emos expresado que la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada." *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 778 (2022). A tono de ello, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". Así pues, es usual que no

intervengamos, ni alteraremos innecesariamente las determinaciones de hecho formuladas por el tribunal de primera instancia luego de que se admita y aquilate la prueba presentada durante el juicio. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 65 (2009). Es decir, no podemos "descartar y sustituir las determinaciones tajantes y ponderadas del foro de instancia" por nuestra propia apreciación, a base de un examen del expediente del caso. *Id.*, págs. 65-66.

Es bien sabido que nos corresponde brindarle deferencia al foro primario salvo que exista un error manifiesto o que el tribunal sentenciador haya actuado movido por prejuicio, parcialidad o pasión. *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 987 (2010). Mediante esta norma de deferencia, se impone respeto a la evaluación que hace el tribunal de instancia al aquilatar la credibilidad de un testigo pues es dicho foro quien está en mejor posición para hacerlo. *Id.* Los foros apelativos sólo tenemos ante nos expedientes "mudos e inexpresivos". *Id.* Es el foro primario quien tiene la oportunidad de escuchar a los testigos mientras declaran y así puede apreciar su "*demeanor*". *Colón v. Lotería*, 167 DPR 625, 659 (2006). Es dicho foro quien debe adjudicar los conflictos de prueba. *S. L. G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009).

Ahora bien, esta norma no es absoluta pues procederá nuestra intervención con dicha valoración si una evaluación de la totalidad de la prueba testifical nos provoca tal insatisfacción o intranquilidad de conciencia que perturbe nuestro sentido básico de justicia. *Santiago Maldonado v. Alvelo Rivera*, 2026 TSPR 14; *S. L. G. Rivera Carrasquillo v. A.A.A.*, supra, pág. 356. La parte apelante que interese su revocación es quien tiene que señalar y demostrar el fundamento para ello. *Id.* Es decir, tiene el deber de demostrar el error manifiesto o fundamentar que existió pasión, prejuicio o parcialidad. *Id.* El foro apelativo intervendrá en el asunto que se trate si la apreciación de la prueba realizada por el foro primario no concuerda con la realidad fáctica o "es inherentemente imposible o increíble". *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002).

Será también meritoria nuestra intervención en casos en los que la apreciación de la prueba del foro primario no represente "el balance más racional, justiciero y jurídico de la totalidad de la prueba". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Miranda Cruz y otros v. S.L.G. Ritch*, 176 DPR 951, 974 (2009). El tribunal de primera instancia se excederá en el ejercicio de su discreción si, al apreciar la prueba, infundadamente le asigna gran valor a un hecho irrelevante e inmaterial, y basa su determinación exclusivamente en éste; o si injustificadamente pasa por alto un hecho material significativo que no debió ignorar; o si, aun considerando todos los hechos materiales y descartando todos los irrelevantes, los sopesa y calibra de forma liviana. *García v. Asociación*, 165 DPR 311, 321-322 (2005).

**III.**

En esencia, la apelante plantea que existió una comunidad de bienes entre ella y el apelado. Ante ello, aduce que se presume que ambos mantenían un cincuenta por ciento (50%) de participación sobre los bienes acumulados durante su relación de concubinato. Entiende, que el apelado no rebatió la referida presunción, por lo que el tribunal de instancia erró al adjudicar que la estructura en cuestión le pertenece exclusivamente al apelado. Sostiene, que ella y su padre aportaron dinero y esfuerzo para construir la aludida estructura. Además, alega que ella incurrió en gastos para mantener el hogar de la pareja. Por lo cual, arguye que es errónea la liquidación y adjudicación realizada por el foro primario.

Por su parte, el apelado sostiene que la apelante no presentó prueba sobre las alegadas aportaciones económicas realizadas por ella para la construcción de la propiedad objeto de disputa. Añade, que este Tribunal le debe prestar deferencia a la decisión del foro primario puesto que sus determinaciones de hechos se sustentan en la prueba documental y testimonial presentada. Siendo así, asevera que este Foro está impedido de intervenir y variar la apreciación de la prueba realizada por el tribunal recurrido.

Tras una revisión de la totalidad del expediente ante nuestra consideración y de la transcripción de la prueba oral, concluimos *confirmar* el dictamen recurrido. Nos explicamos.

Surge del marco jurídico expuesto, que las relaciones de concubinato o de convivencia análoga a la conyugal no generan los mismos derechos económicos que instituye una relación matrimonial. Siendo así, al momento de liquidar y dividir el patrimonio acumulado por dos concubinos los tribunales debemos ejercer nuestra labor judicial caso a caso de conformidad a sus circunstancias particulares. Ahora bien, esta evaluación judicial no está exenta de parámetros, dado que se debe llevar a cabo a la luz de las siguientes consideraciones: a) la existencia de un acuerdo expreso pactado por la pareja; b) el perfeccionamiento de un pacto implícito; o c) la aplicabilidad de la doctrina de enriquecimiento injusto.

Habiendo establecido lo anterior, pasemos a la evaluación de la extinta relación afectiva formada por las partes de epígrafe. No existe controversia en que la apelante y el apelado convivieron públicamente por espacio de veinte (20) años. Tampoco es un hecho en disputa que durante su relación adquirieron un terreno de manera conjunta en el que se edificó una casa. Ante ello, la cuestión principal que nos ocupa versa sobre la titularidad de la referida estructura y la suficiencia de la evaluación de la prueba oral realizada por el foro primario. En síntesis, el foro recurrido determinó que el único bien sujeto a división es el terreno y no la estructura enclavada al mismo, por lo que únicamente le concedió a la apelante la mitad del valor del terreno, según la tasación presentada. Asimismo, de conformidad a los testimonios de ambas partes, el tribunal de instancia concluyó que los cuatro (4) automóviles adquiridos durante la relación de la pareja le pertenecen de forma exclusiva al apelado.

Al examinar de manera detenida la transcripción de la prueba oral estipulada por las partes, no hallamos razón para variar el criterio adjudicativo realizado por el tribunal de instancia. En lo que respecta a los vehículos de motor en cuestión, la apelante declaró que éstos fueron

adquiridos por el apelado luego de que éste obtuviera una indemnización económica en virtud de la sentencia que adjudicó su caso civil de materia laboral.[2] Cónsono con lo anterior, la apelante admitió que no realizó aportación económica para la adquisición de los aludidos vehículos y tampoco están registrados bajo su nombre.[3] Por su parte, el apelado testificó que él adquirió los referidos vehículos de motor tras prevalecer en el litigio de despido injustificado y discriminatorio.[4] Ante las expresiones de ambas partes, se hace necesario concluir que dichos automóviles pertenecen de forma exclusiva al apelado. Por lo cual, la apelante no tiene derecho alguno sobre los mismos.

Por otro lado, la apelante plantea que debe ser indemnizada por las aducidas sumas de dinero que invirtió para la construcción de la estructura que se elevó en el terreno de ambas partes. Particularmente, la apelante declaró que el apelado no trabajó desde el año 2008 hasta el año 2012 y que durante ese periodo de tiempo ella subvencionó los gastos del hogar.[5] A su vez, testificó que la aludida estructura se comenzó a edificar antes del año 2005 y se terminó de construir en el año 2013 a través de la aportación económica de ambas partes y su padre.[6] Sin embargo, la apelante **no pudo recordar** la cantidad de dinero que desembolsó para la construcción de la casa.[7] Por su parte, el apelado testificó que la construcción se realizó con su dinero y que él compró los materiales para construir la casa en cuestión.[8] La apelante no negó el hecho de que el apelado llevaba a cabo

---

[2] Véase transcripción de la vista en su fondo, páginas. 43 y 55, Entrada Núm. 4 de SUMAC del TA, anejo 1.

[3] Véase transcripción de la vista en su fondo, pág. 90-91, Entrada Núm. 4 de SUMAC del TA, anejo 1.

[4] Véase transcripción de la vista en su fondo, pág. 113-114, Entrada Núm. 4 de SUMAC del TA, anejo 1.

[5] Véase transcripción de la vista en su fondo, páginas 31 y 43-44, Entrada Núm. 4 de SUMAC del TA, anejo 1.

[6] Véase transcripción de la vista en su fondo, pág. 48-49, Entrada Núm. 4 de SUMAC del TA, anejo 1.

[7] Véase transcripción de la vista en su fondo, pág. 75-76 y pág. 82-83, Entrada Núm. 4 de SUMAC del TA, anejo 1.

[8] Véase transcripción de la vista en su fondo, páginas. 108 y 114, Entrada Núm. 4 de SUMAC del TA, anejo 1.

las compras de los materiales de construcción.[9] Además, el apelado declaró expresamente lo siguiente con relación a la construcción de la estructura:

> "Eh, yo traba…yo sé de electricidad, plomería, yo sé de pintura, eh, sé de construcción, porque yo construí mi casa, albañil, carpintero."[10]

El tribunal de instancia le concedió entera credibilidad al testimonio del apelado. Así pues, de conformidad a lo previamente esbozado, la labor judicial de determinar lo que verdaderamente ocurrió y de adjudicar credibilidad depende mayormente de la exposición del Juzgador a la prueba presentada. Ante ello, los foros apelativos no debemos intervenir ni sustituir innecesariamente el criterio del foro primario a menos que haya actuado con pasión, prejuicio o parcialidad. En este caso, merece nuestra deferencia el examen de la prueba oral ejercido por el tribunal de instancia y las determinaciones de hechos acogidas por dicho tribunal a tenor del referido examen.

Nótese, que el foro primario únicamente tuvo ante sí los testimonios vertidos en Corte por las partes de epígrafe al momento de decidir sobre la titularidad de la edificación, puesto que no obra en el expediente del caso prueba documental de los gastos de mantenimiento y de construcción incurridos. De manera que, ante este Tribunal revisor solo existe un expediente carente de prueba documental que nos lleve a modificar el dictamen del foro apelado. Mientras que, el tribunal de instancia tuvo la oportunidad de escuchar y de apreciar el *"demeanor"* de las partes. Por lo tanto, no existen los fundamentos necesarios para que esta Curia decida de una manera distinta a lo determinado por el foro primario.

Es preciso mencionar, que aun asumiendo que las partes acordaron implícitamente establecer una comunidad de bienes entre sí, a la luz de los testimonios vertidos en el Juicio se evidencia que la referida comunidad no

---

[9] Véase transcripción de la vista en su fondo, páginas. 74, Entrada Núm. 4 de SUMAC del TA, anejo 1.

[10] Véase transcripción de la vista en su fondo, pág. 114, Entrada Núm. 4 de SUMAC del TA, anejo 1.

se constituyó de participaciones iguales de cincuenta por ciento (50%), cada uno. A tenor de lo discutido, el apelado demostró que los automóviles fueron adquiridos de su propio pecunio y la estructura fue levantada por su esfuerzo e inversión. Tampoco procede una alegación de enriquecimiento injusto, puesto que la suma concedida a la apelante por el valor del terreno es equitativa con relación a los fondos que ella contribuyó para obtener los bienes objeto de disputa. Por lo tanto, confirmamos el dictamen recurrido.

**IV.**

Por los fundamentos expuestos, *confirmamos* la *"Sentencia"* recurrida.

**Notifíquese**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones